Casey, C. J.,

delivered the opinion of the Court.

On the 5th day of Septembers A. D. 1859, the claimant and one Charles H. Pond were- partners, doing business in the city of New York, in the name of Cooper & Pond. The original petition was filed in their names, as partners. An ■ amendment was afterwards added, setting forth that Pond, after the bringing of the suit, to wit, on the 27th day of September, 1860, had, by a certain instrument under seal, assigned and transferred all his interest in the claim to his partner, Albert Cooper. The assignment, as admitted by the parties on the record, was to enable Mr. Pond to become a witness in the case.
The claim arose out of an agreement between Cooper & Pond and Colonel H. K. Craig, Chief of Ordnance. In September, 1859, the Ordnance' department had advertised a lot of old and condemned muskets to be sold at public sale. On the 5th day of that month, Cooper & Pond telegraphed to Colonel Craig as to the price at which they could purchase them at private sale. He replied, by the same means of communication, that they could have any of them at two and a half dollars apiece. Upon receipt of this telegram Mr. Pond came on to Washington, and selected five hundred and eighty-three of the muskets. They paid the amount of the purchase money, and chartered a vessel to transport them to New York. They allege, also, that after the purchase they made an agreement to resell the same muskets to one do Goicouria, at a profit of one dollar and fifty cents each. Before the muskets were shipped from Washington the opinion of the Attorney General was taken in the matter, and he decided that the sale made to the claim *86 ants was void, inasmuch as the act of Congress, and the regulations of the department, required that sales of condemned arms and ordnance should he made at public sale. The sale was accordingly revoked by the Chief of Ordnance, and approved by the acting Secretary of War. Thereupon this suit was brought to recover damages for the revocation of such contract. The claimant contended that he was not only entitled to recover in damages the difference between the price he was to pay and that for which he had sold them, hut, in addition thereto, any damages he might be liable to pay to the party to whom he had resold the muskets.
The only witness sworn in the case was Charles H. Pond, and his testimony the only proof offered by the claimant to sustain the case.
On his cross-examination he stated that he was then still a member of the firm of Cooper & Pond ; that he had sold his interest in the claim to his partner, Cooper, bona fide, and taken his note for one thousand, dollars, which was to be paid to him in any event; and that the sale and transfer was made to qualify him as a witness in the case; and that the expenses, so far as incurred, of prosecuting the claim, had been paid by the firm.
The claim was resisted on the part of the United States, upon the following grounds :
“ I. Cooper cannot maintain this suit alone. The contract was made with Cooper & Pond jointly, and they must join in the action.
‘‘ II. There is no evidence that the officers who made the agreement set up in this case had authority to enter into the contract on the part of the United States.
“ III. The said officers, the Secretary of War and the colonel of ordnance, had not, in fact, such authority.
“ IV. The Secretary and colonel of ordnance did not act within the scope of their apparent authority. They had no apparent authority to sell guns. The War Department and its officers are not ordinarily sellers of goods, nor held out to the world as such. They must have special authority to sell, and such special authority must be strictly pursued. They are not general agents to buy and sell guns.
“ V. There is no> evidence of the quantum of damages. The testimony of Pond is the only evidence on this point, and he was not a competent witness.”
The first point raises the question of the assignment. We need not stop to consider the technical question raised by the point as stated, for we think the assignment in this case comes directly within the pro *87 hibition of the act of Congress approved the 26th of February, 1853, section 1, which provides that “ all transfers and assignments hereafter made of any claim upon the United States, or any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or any part or share thereof, shall bo absolutely null and void, unless the same shall be freely made and executed in the presence of at least two attesting witnesses, after the allowance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof.”
This section, as we decided in the case of Sines vs. The United States, at the present term, makes the attempted transfer “ absolutely null and void.” It is useless to refine upon this provision, or attempt to fritter away the plain and explicit words used by Congress when they say “ all transfers and assignments of any claim upon the United States.” We can only judge of what they intended by what they have said. And when they say that all assignments of any claim upon the United States “ shall be absolutely null and void” unless made after the allowance and liquidation of the claim, we must suppose they knew what they were doing, and meant what they said. Nor can we find anything in the laws constituting this court which operate as a repeal of the provisions of this act. They do not do so in express terms, and, in order to have that effect by implication, the subsequent statute must be clearly and indisputably contradictory, and contrary to the former act in the very matter, and the repugnancy such that the two acts cannot be reconciled, for then leges posteriores, priores contrarias abrogant. The leaning of the courts is so strong as almost to establish the doctrine that there can be no repeal by implication.— (Dwarris on Stat., 530- 31; 2 Q. B. Rep., 84; 5 Beav., 582.)
We therefore hold that the transfer was void, and that the interest remained in the partners as it was at the commencement of the suit, and it must therefore be regarded not as a suit in the name and for the use of Cooper, but in the name of the firm, and for its use and benefit.
It is doubtful whether, aside from the act, such an assignment could be made as would enable the party to sue in his own name ; but it is unnecessary to consider that aspect of the case, as we hold the provisions of the act applicable to and conclusive of the case.
This view of the assignment also shows that Mr. Pond is not a competent witness. If the assignment was void under the statute, he re *88 mained not only a party on the record, but a party in interest, and as such excluded from testifying not only as a party on the record, but as having a direct and immediate interest in the event of the suit.
The authority of the officers who attempted to make this private sale of these arms is controverted; and it is insisted their action was contrary to the positive enactments of Congress, and the regulations of the "War Department. The act of Congress approved March 3, 1825, sections 1 and 2, enacts “ That the President of the United States be, and he is hereby, authorized to cause to be sold any ordnance, arms, ammunition, or other military stores or subsistence, or medical supplies, which, upon proper inspection or survey, shall appear to be damaged or otherwise unsuitable for the public service, whenever, in his opinion, the sale of such unserviceable stores will be advantageous to the public service.
“ Sec. 2. The inspection or survey of the unserviceable stores shall be made by an inspector general, or such other officer or officers as the Secretary of War may appoint for that purpose j and the sales shall be made under such rules and regulations as may be prescribed by the Secretary of War.”
The “Army Regulations,” No. 928, providfe on this subject as follows : “ Military stores and other army supplies found unsuitable to the public service, after inspection by an inspector general, or such special inspection as may have been directed in the case, and ordered for sale, shall be sold for cash at auction, on due public notice, and in such market as the public interests may require.” It was held by Mr. Chief Justice Taney, when Attorney General, that this act, and the army regulations made in pursuance of it, avoided a sale made by the Chief of Ordnance, of arms or ordnance, except upon the order of the President of the United States, after the survey required, and then only at public auction after due notice. (2 Opin. Att’ys Gen., 580.) The same views werq entertained by Mr. Attorney General Black, in reference to the right of the officers to make the sale in question.
If the preliminary steps, to justify a sale at all in this case, were followed, it has not been shown in the evidence. The act and the regulation require that there shall be a survey by an inspector general, or by some one especially appointed by the Secretary of War for that purpose; that they shall be found to be unserviceable ; the President shall order them to be sold, and they shall be sold at public auction. The proof here fails in all these three essential items — the. inspection, condemnation, and public sale — and, consequently, the whole transac *89 tion is not only voidable, but utterly void, conferring no rights on the claimants, and imposing no obligations upon the government. And there is not any legal or equitable claim for which any action will lie against the government arising out of this void transaction.
The claimants suppose that as the sale was attempted to be made by officers of the government, who exceeded their actual authority, that while the sale could not be enforced, yet damages could be recovered for the breach of the agreement. But if the agreement was void, it was void for all purposes. Besides, the claimant was bound to know and understand what were the powers and authorities of a public officer, with whom he was dealing, in reference to public interests and public property. The rules in this respect, between public officers and private agents, are materially different. This difference arises, in some degree, from the fact that the actual powers and authorities of a private agent for the most part depend upon private instructions communicated by his principal, and, in many instances, cannot be known to those with whom he deals on behalf of his principal. In such cases his apparent power and authority may, and often do, override their actual limitations. But with public officers or agents the case is different. In a majority of instances their powers are conferred, limited, and regulated by law, and hence presumed to be equally well known and understood by all.
This act of Congress, and the army regulations which defined the mode and manner in which such property could be sold, we re equally accessible to the claimant as they were to the officers of the government, and he was equally bound to know them.
Mr. Justice Story, in his work on Agency, says : “ In the case of public agents the government, or other public authority, is not bound, unless it manifestly appears that the agent is acting within the scope of his authority, or he is held out as having authority to do the act, or is employed in his capacity as a public agent, to make the declaration or representation for the government. Indeed this rule seems indispensable, in order to guard the public against losses and injuries arising from the fraud or mistake, or rashness and indiscretion, of their agents. And there is no hardship in requiring from private persons, dealing with public officers, the duty of inquiring as to their real or apparent power and authority to bind the government.” (Story on Ag., § 307 a.)
We therefore hold:
1st. That the assignment made in this ease is utterly void, as contravening the provisions of the act of February 2G, 1S53.
Mr. "VVm. D. Booth for claimant.
Mr. J. D. McPherson, Assistant Solicitor, for the government.
2d. That the claimant, Cooper, cannot maintain this action in his own name.
3d. That Charles H. Pond is not a competent witness in the case, because he is both a party on the record and a party in interest.
4th. That the sale set up in this case was utterly void, under the act of March 3, 1825, and the Army Regulations, No. 928.
And for these reasons we find for the defendants, and dismiss the petition.
Loring, J. — I agree that the defendants are entitled to judgment.